May it please the Court, my name is George Boisseau, I represent Mr. Tashbrook. And although I've raised many issues on the appeal, I want to today address three issues. Specifically, I urge the Court to find counts 8 and 9 in this case unconstitutionally as applied to Mr. Tashbrook. These are the photographs of Teresa, the miner known as Teresa, that never went into interstate commerce. The photographs remained in California. Ms. Teresa did not travel interstate commerce. She did not travel interstate. She came from Southern California and Northern California. And the jurisdictional basis for the interstate commerce finding was the fact that the film was produced in, I believe, the Netherlands. This case, this Court should follow U.S. v. McCoy, which essentially dealing with a similar statute found the jurisdictional nexus of the camera being produced in a foreign country insufficient to warrant, to find that statute constitutional. This case is the mirror image of U.S. v. McCoy. Significantly, this Court has been followed by two district courts in Utah and Northern Alabama dealing with the same statute, 2251, saying that as the statute seemed to punish purely interstate activity, the statute was unconstitutionally as applied. And I would urge the Court to just follow McCoy. Counsel, do you think that this Raich case, the marijuana case that's been argued to the Supreme Court, may have some substantial bearing on what we do on this issue? Your Honor, that is not a case that I have cited in my brief. I know it, but I hope you know about the case. And in all fairness, Your Honor, I am not familiar with that particular case, and I would seek leave of court to brief that particular issue. Well, in that case, our Court held that marijuana grown locally in California for use for persons who were ill and needed it for treatment didn't fall under the Federal Drug Act because it was clearly intrastate. And that's been argued to the Supreme Court. Yes, Your Honor. And I would distinguish. And here's the difference. I mean, this case, McCoy, the cases that have upheld 2251 have always said that child pornography is interstate in nature and that there's a national market for it. But in this case, there's no evidence that Mr. Tashbrook put the photographs in interstate commerce, that he intended to put it in interstate commerce. He possessed this. Well, there is evidence that at least in one case he sent pornographic pictures to the girl. Was she in Pennsylvania? Yes, Your Honor. And those are separate counts. Oh, I understand that. But you said there was no evidence of a tendency of your client to do that sort of thing. Well, he did it. Well, he did. He took photographs. I mean, and I don't dispute the fact that the minor known as Stephanie sent photographs to him through interstate commerce. And we didn't raise that issue as to counts three, four, and five. But each count has to be judged separately. And the conduct involving Teresa counts eight and nine. In that case, there is no situation and no evidence to suggest that he was going to put her photographs in any type of interstate commerce or he was going to distribute those photographs. In fact, those photographs were found at his home. So although, yes, he did at times send photographs of minors not included, and in fact it was disputed whether the photographs that he sent interstate was of a minor. But those were separate counts, and I don't think we can use his conduct in those cases to establish a jurisdictional basis for the counts eight and nine. Does it make any difference in this analysis, revised question, does the use of the Internet and computers make any difference in the Commerce Clause analysis? Not in this particular case. In some cases, obviously, if you send something by the Internet, that's interstate commerce, and the statute provides for use of computer to serve the jurisdictional basis. But using counts eight and nine, there's no evidence. And the stated basis for the jurisdiction in counts eight and nine was that the photograph and the film and the camera was produced in a foreign country, and that had traveled interstate. And there was no dispute. There was a stipulation that actually had been produced out of state. How did your client communicate with this individual? He communicated by telephone and by computer. So there was no dispute that he had done this, calling Teresa and he solicited her by the Internet. But the issues surrounding how he contacted her is not significant for these counts, charged him with enticing a minor to make a photograph of explicit sexual conduct. That conduct, you know, she came up to northern California, and the photographs were taken of her in northern California. So the activity that gave rise to the counts eight and nine occurred within the state of California and didn't travel in interstate commerce. So you have to look at the activity that is actually charged, not the fact that he might have used the computer and other conduct. The second issue I would like to discuss was the related issue of the multiplicity of counts and the unit of prosecution. The district court and the parties relied on the case of U.S. v. Esch, out of, you know, an Eighth Circuit case. But there's no Ninth Circuit case dealing directly with this particular issue, and I would urge the court not to follow Esch, to find that the unit of prosecution is the use of the minor rather than how many photographs were produced from one sitting of the minor for taking photographs. And significantly is that in this particular case it's undisputed that as to Stephanie, that the three photographs that she sent were taken in one sitting by herself and sent in interstate commerce. Now, there's this one sitting, and she sent three photographs, and the government charged each photograph as a separate unit of prosecution. As to Counts 8 and 9 with Teresa, the government charged two counts based on two photographs. Now, Esch dealt with a single setting that photographs were taken and with two minors and said that that constituted two units of prosecution. But it didn't go so far as to say that it's each photograph that should be a unit of prosecution. And it is ñ and given the statute really doesn't punish the photograph. It punishes the enticement of the minor to take photos of explicit conduct. So we're ñ the use of the minor is relevant, not how many photos are taken in any particular setting. And I would urge the Court to find that the unit of prosecution should be the use of the minor and that as to Stephanie, that Counts 3 and 4 be one count and Counts 8 and 9 as to Teresa be another count, not four counts. Finally, Your Honor, I'd like to discuss the issue of the denial of the continuance. Mr. Tashbrook, pretrial, made a motion to continue the trial based on his ñ the defense's inability to investigate the hard drive that was taken from Stephanie and to check her hard drive for all her instant messages. Now, the offer of proof was that she had communicated with other people indicating that she was over 18 years of age and that the defense wanted to establish a firm of defense as to Counts 3, 4, and 5, that Mr. Tashbrook reasonably believed that she was over 18. And secondly, to refute to the contention by the government that she was a minor because the government had the burden of proof that shows she was a minor for as to Counts 1, 2, and 6. Now, the defense, at the end of trial, actually made a motion mid-trial saying that they needed additional months, and now both those requests were denied. And on the issue of post-trial motions, renewed the motion for continuance saying that they were denied a fair trial based on the district court's denial of the motion for continuance. This issue of the reasonableness of Tashbrook's belief that she was – that Stephanie was over 18 or the government's proof on her age was a critical issue as to all these counts. And it went to the heart of the defense. Mr. Tashbrook's defense as to these counts was that he reasonably believed that Stephanie was over 18 based on the content of their conversations. And they needed this hard drive to establish that. What's your factual basis for asserting that there were other e-mail messages in which this individual young woman had stated that she was over 18? There was a series of conversations between her and a pen pal or rather an instant message buddy that evidently was a student at UCLA, and she communicated with him. And that was set forth in the record that she had communicated with him and that she wanted to come to California. And the defense wanted to explore all the e-mails to find out whether she had represented that she was over 18 to this gentleman or to others. Now, the defense was that she had misrepresented her age to Mr. Tashbrook and wanted to go through all the messages in her hard drive to establish that fact. What was her testimony? Her testimony was specifically that she told, it was inconsistent in time, but she testified at one point that she told Mr. Tashbrook that she was not 18, that she was, I believe, 16. And she told, but when asked further on cross-examination, she was unsure whether she indicated that in some of her communications to Mr. Tashbrook. So there was conflicting testimony on that. But the issue was not so much, but the issue was if this was a defense, and it was a defense, and it went to the heart of the defense to these counts, the denial of the continuous motion was extremely prejudicial. It eliminated any chance of Mr. Tashbrook defending against these counts. I'm sorry. Go ahead. I wanted to go back to the multiplicity counts. The court in sentencing had the sentences run concurrently rather than consecutively. Does that cure the problem? Your Honor, it may. I mean, I've asked for remand for resentencing. And with the case of United States v. Booker, U.S. v. Ammaline, these issues are certainly up in the air right now in terms of what we should do with U.S. v. Booker. And your client wants to go back to Judge Fogel and be resentenced? Yes, he does. In an environment where he's not constrained by the guidelines? Well, Your Honor, he receives 60 years right now. I mean, the sentence is essentially for his natural life. Yes, he could do worse, but hopefully with some facts he could do better. Do you want to save any time for rebuttal at all? Yes. If I could, please. You've got about a minute. Thank you for your argument, counsel. We'll hear from the government at this time. Ms. Sheehy. Good morning, Your Honor. Shawna Yen for the United States. I'd like to address the appellant's arguments in the order in which he took them, and I'd like to take the constitutional challenge first, the McCoy issue. Mr. Tashbook undertook a nationwide search and hunt for minor victims across the United States in five different states using the Internet. He falsely advertised he had positions for them. He offered to fly them to California. He called them by phone. He pursued them relentlessly. This was a case where the defendant clearly used the defendant's activity clearly affected interstate commerce. Now, Judge Fletcher had mentioned the Raich case as a potential authority. Now, the Raich case is distinguishable from this case because in that case the industry was the growth of marijuana and the use of marijuana. In that case, what the Court found was that the limited medicinal use of marijuana that was prescribed by a physician is not the kind of activity that is going to affect interstate commerce, nor was it specifically addressed by Congress when it passes CSA. Child pornography is entirely different. Congress has specifically stated that it wants to eradicate the entire market of child pornography, and by doing so, it specifically recognized that the roots of child pornography are intrastate. The intrastate production and possession of child pornography is what really feeds the market of child pornography, and they realized, Congress realized that in order to eradicate that market, it had to get to that intrastate activity. And it was for that reason that it eliminated the requirement that child pornography has to be for pecuniary gain in order to be addressed by the statute. And for those reasons, McCoy is very distinguishable from this case. McCoy was completely different. First it dealt with a completely different statute. It was possession of child pornography. The production statute in this case is inherently closer related, more closely related to the stream of commerce, because by producing child pornography, even if it's intrastate, that child pornography then has the ability to be disseminated. And in this case, as Judge Hawkins pointed out, the defendant did, in fact, distribute child pornography when he was trying to entice the minor in Pennsylvania to take photographs of herself and send them back to him. He also threatened the minor in Pennsylvania that if she did not do what he wanted, he would then send photographs of her to her local newspaper in Pennsylvania. So this is a man who was systematically targeting minors. He was an addict in terms of child pornography, and he was obviously had a propensity to distribute. It's an entirely different case from McCoy. And I would ask that the Court uphold the constitutionality of 2251a as applied to this defendant. I'd like to address the other points. With respect to the motion to continue the trial, what the defendant – what the appellant is referring to is that there apparently was some information that the minor Stephanie had been talking to someone named Bay, a college student, about coming out to California. This information was provided to the defendant four months before trial in December, and he had four months to subpoena the Internet service provider to get any information about the buddy list that he wanted to. He chose not to do that. Subsequently, about 30 days before trial, the hard drive was provided to the defendant that had the entire mirror image of Stephanie's computer for his review. During pretrial motions, the government submitted the declaration of FBI forensic analyst Donald C., in which Donald C. said that he had investigated the hard drive of Stephanie's computer, and it had taken him only two or three days to investigate the entire hard drive by using search terms. And in fact, if somebody didn't use search terms but wanted to exhaustively review the hard drive, it would have taken him one week. The defense had 30 days to review it. There was no prejudice here. In terms of Tashbrook's knowledge of Stephanie's age, there was no inconsistent evidence. What Stephanie testified was that she told Tashbrook over the phone that she was 16 years old. On cross-examination, the defense tried to attack that position by asking Stephanie, well, do you recall if you sent any e-mails about your age to Tashbrook? All she said was she didn't recall about the e-mail. She never backed off from her position that by phone she had told him that she was 16 years old. The defendant cannot show prejudice at all for purposes of the motion to continue the trial. As to the multiplicity challenge, the only authority really out there is Esch, which is actually entirely on point, although it's out of circuit. What Esch informed us is that when you have separate photographs of a minor, each separate photograph is a separate enticement, it's a separate exploitation of that child. That's particularly true with the photographs of Stephanie when she's not only in different positions, but doing entirely different things. One, she's standing naked in front of the bathroom mirror masturbating. Another, she's standing naked on her – she's lying on her back masturbating. These are two exploitations, and there is no multiplicity issue there. I had wanted to address a sentencing issue in this case. Obviously, since the parties have submitted their briefs, the Supreme Court has come down with United States v. Booker. And I'd like to briefly mention how Booker does and doesn't affect this case. First, Booker does make Blakeley applicable to the sentencing guidelines, and it since has made the guidelines advisory. This doesn't take away from the fact that Mr. Taschbuck was sentenced under a mandatory guidelines range. But what Booker tells us is that doesn't mean an automatic remand. What this Court has to do is look at his sentence and see, is there a reasonable probability that the district court would have sentenced him to a lesser sentence? Has the defendant borne his burden of showing that the district court would have sentenced him to anything less? And in my 28J letter that I sent to the Court last week, I cited to a number of out-of-circuit cases in which, in the rare circumstance, as in this case, where the Court, despite doing a guidelines analysis, really does not rely on the guidelines at all, but it still instead relies on the mandatory statutory minimums and the statutory maximums in sentencing the defendant, that there really is no Booker error here. Now, what the Court did in brief is this. The Court wanted to impose a 60-year sentence on this 34-year-old man in order to make sure that Mr. Taschbuck was there for most, if not all, of his natural life. And that 60-year sentence was comprised of two 30-year mandatory minimum sentences under the statute. The first 30-year sentence was for all the counsel related to Stephanie, counsel 1 to 6. And what the Court said was that the 30-year mandatory minimum on counts 3 and 4 would apply, and then he imposed 15-year sentences on the remaining counts with respect to Stephanie and had them run concurrently with a 30-year sentence. But the Court also provided an alternative sentence, which is that counts 1 and 2, both 15-year sentences, were to run consecutively as an alternative way to make sure that Mr. Taschbuck was sentenced to 30 years on the counts with respect to Theresa and the other victims, and it did this by imposing the statutory mandatory minimum of 30 years on counts 8 and 9 to run concurrently with each other. The Court then imposed 15-year sentences on the remaining counts, 10, 11, and 12, with 10 and 11 to run consecutively on the counts with respect to Stephanie. And the Court also provided an alternative basis for imposing 30 years on Mr. Taschbuck for that set of convictions. So it was clear that the Court wanted definitely, its intention was to impose 60 years on Mr. Taschbuck, and it's instructive that in imposing this, the Court actually, even though he didn't have Booker in front of him, he actually did go through the factors of 3553a, just the way Booker said a court should have done. The Court looked at this particular defendant's characteristics. He said that Mr. Taschbuck was a danger to the community, would be probably a danger to the community for the rest of his life, that this defendant suffered from a deep pathology because he failed to appreciate how wrongful his conduct was. The Court said that he had to consider what kind of sentence he had to impose to adequately protect the community and to punish the particular kind of crime that was committed in this case. And, in fact, when the Court abruptly departed up to a criminal history category of four, it said that that criminal history category is much more reflective of the type of individual that this person has been up to this point in his life, and it was this kind of criminal history that was needed in order to protect the public. So in other words, the bottom line is, with respect to the sentence, there's no reason to remand the sentence. This district court has made it absolutely clear that its intention was to impose the 60 years. There's absolutely no reason to believe it would have done any – would have done anything differently under an advisory scheme. Roberts. Roberts. I don't see any other questions, counsel. Thank you for your argument. Rebuttal. In terms of the McCoy issue, this circuit has U.S. v. McCoy. The – a clear precedent for this particular case, 2251. McCoy, as I recall, was a prosecution of a family where the father had taken a picture of his wife and his young daughter, right? Yes. And this was in with a bunch of pictures of a family vacation or whatever. It went to a photo lab and the photo lab person informed authorities, right? Absolutely, Your Honor. So – but the court – this court focused on the – But any evidence in that case that the defendant had used an instrumentality like the Internet to set in motion what happened? No. There was not. But the critical distinction – I mean, the reason why McCoy is precedent, it talks about the photographs and the jurisdictional basis for – that was stated in that prosecution was that the film and the camera had traveled in interstate commerce. And that's the same jurisdictional basis in this particular case. Yes, Mr. – on other counts, Mr. – on counts one and – or actually three and four, there's no question that Mr. Tashbrook used interstate commerce. That wasn't – that wasn't an issue at time of trial. But in these particular cases, he – these photographs never traveled to interstate commerce. They never intended to travel to interstate commerce. And the fact that he might have used a phone or might have used the Internet to talk to the miner and get her up in Northern California is really not relevant to the issue and the jurisdictional basis that needed to be established by the government for this case. Okay. Thank you for your argument. Thanks, both sides, for their argument. The case just argued will be submitted for decision. We'll proceed to the last case on the calendar this morning, which is the United States versus Howard Vogel. And I
judges: Lay, B. Fletcher, Hawkins